```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/23/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER RANSOM,

        Plaintiff,

-against-

C.O. ANDREWS,

        Defendant.

21-CV-6343 (JPO) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

The Court has received and reviewed (i) plaintiff Ransom's letter-motion dated July 1 and filed July 8, 2022 (Dkt. 38); (ii) his letter-motion dated July 5 and filed July 11, 2022 (Dkt. 40); and (iii) his letter dated July 21 and filed July 25, 2022 (Dkt. 44), all of which seek orders compelling defendant Andrews to produce additional discovery. In a letter dated July 20, 2022 (Dkt. 42), Andrews advised that he would respond "as scheduled by the Court." Andrews then filed a status letter dated August 5, 2022 (Dkt. 45), in which he advised that a portion of plaintiff's July 5 letter-motion is moot because the requested medical records were produced.

In an Order dated August 8, 2022 (Dkt. 46), I ordered defendant to file a response to plaintiff's July 1, July 5, and July 21 letters no later than August 15, 2022, attaching copies of the relevant discovery requests and responses. On August 15, 2022, defendant filed the required responding letter (Def. Ltr.) (Dkt. 47), attaching plaintiff's May 19, 2022 document requests as Exhibit A and defendant's June 22, 2022 responses and objections thereto as Exhibit B. For the reasons that follow, plaintiff's letter-motions will be granted in part and denied in part.

## Background

In his Complaint (Dkt. 2), filed *pro se*, plaintiff alleges that on or about July 9, 2021, while he was a pretrial detainee housed in the North Infirmary Command (NIC) at Rikers Island, defendant Andrews, a Correctional Officer, escorted him from the showers to his "enhanced

restraints living quarters" in rear cuffs, and in violation of "proper protocol" returned him to his cell still cuffed, without "locking in" his cellmate, who remained "free to roam the cage" and who assaulted plaintiff "as soon as [he] entered the cage." Compl. ¶¶ 1-5. Plaintiff further alleges that his cellmate punched him in the facial area and knocked him unconscious while defendant failed to intervene. *Id*. ¶¶ 6-7. Defendant then escorted plaintiff to medical, where plaintiff lied about how he got hurt, so as not to be labelled a snitch. *Id*. ¶¶ 8-9. However, prison staff later "checked the video surveillance," which "confirmed that the plaintiff was in fact assaulted." *Id*. ¶ 10.

Defendant accuses Andrews of acting with deliberate indifference and a reckless disregard for his safety, which in plaintiff's view violated his Fourth Amendment rights. *Id*. at ECF p. 5. The Court construes the Complaint as asserting a claim for damages against Andrews, pursuant to 42 U.S.C. § 1983, for violating his rights under the Fourteenth Amendment, which requires correction officials to "take reasonable measures to ensure the safety of prisoners, including protecting them against violence by other prisoners." *Vazquez v. City of New York*, 2022 WL 2704763, at *10 (S.D.N.Y. June 17, 2022) (collecting cases), *report and recommendation adopted,* 2022 WL 2704469 (S.D.N.Y. July 11, 2022). A failure-to-protect claim brought under the Fourteenth Amendment requires the plaintiff to establish, among other things, that the officer knew or should have known of a serious risk of harm to the plaintiff but disregarded that risk. *Id*.

### The Disputed Document Requests

#### Request No. 1

In his Request No. 1, plaintiff asks for New York City Department of Correction (DOC) "guidelines/protocols on how to lock inmates/cellmates in [their] cells, when placing a handcuffed/restraint inmate in [their] caged living quarters at the North Infirmary Command (NIC), [a]s of July 9, 2021." Def. Ltr. Ex. A, at 1. Defendant objected to this request on multiple

grounds, some of them clearly off-base (for example, that the request was "vague, ambiguous, overbroad, [and] non-sufficiently limited in time or scope"). *Id*. Ex. B, at 3. Defendant also objected on relevance and burden grounds, and asserted that any responsive documents may be "protected from disclosure by the official information and law enforcement privileges," explaining that there are "security concerns to the extent that a presently incarcerated party seeks documents containing information that describes safety protocols used by correction officers." *Id*.

In his August 15, 2022 letter, defendant presses his relevance objection, arguing that in the absence of a *Monell* claim the DOC's safety protocols for the setting in which plaintiff was injured are of "limited relevance." Def. Ltr. at 2 (arguing that the constitutionality of defendant's conduct is measured against "federal, and state, law and statutes," not "DOC guidelines"). The Court disagrees. While violation of a DOC guideline "does not, in and of itself, constitute a cognizable constitutional claim," *Jenkins v. City of New York*, 2020 WL 6700087, at *3 (E.D.N.Y. Nov. 12, 2020), the existence of such guidelines, and any failure to adhere to them by Andrews, may shed light on whether the officer knew or should have known that putting a rear-cuffed prisoner in a cell with an uncuffed prisoner, particularly in "enhanced restraints" living quarters,[1] created a serious risk of harm to the cuffed prisoner. Conversely, defendant Andrews "may wish to argue that [he] acted in accordance with the Facility's policies or procedures on the date in question" and thus had no reason to know of the alleged risk. *Culbreath v. Griffin*, 2018 WL 11299396, at *5 (S.D.N.Y. Mar. 1, 2018) (in an excessive force case, requiring *in camera* production of prison "policies and/or procedures regarding the use of chemical agents").

---

[1] At Rikers Island, prisons are placed on "enhanced restraint status" after "incidents of violence directed at staff or other inmates." *Vazquez v. Spear*, 2014 WL 3887880, at *1 (S.D.N.Y. Aug. 5, 2014).

Defendant further argues that production of the requested guidelines or protocols would raise "significant security and safety concerns," implicating the law enforcement privilege. Def. Ltr. at 2. In particular, defendant notes that plaintiff is still incarcerated,[2] and argues that "[s]hould these guidelines and protocols be disseminated to the larger incarcerated population, correction officers' and inmates' safety could be at risk." *Id*. Defendant adds that if any guidelines or protocols are produced to plaintiff, they should be "subject to redaction of all information but what is narrowly tailored to be directly relevant to plaintiff's claim," and should be produced "pursuant to a protective order[.]" Def. Ltr. at 3.

The Court agrees in part. The security concerns raised by defendant are unsupported by any specific factual showing and thus are insufficient to block outright the disclosure of protocols or guidelines that are relevant to plaintiff's § 1983 claim and specific to a facility in which plaintiff is no longer housed. *See Culbreath v. Griffin*, 2018 WL 11299396, at *6 ("A correctional facility that objects to discovery on the basis that disclosure of certain information would pose a risk to its institutional security or safety must substantiate that claim" with "specific facts supporting the claimed security risks involved"). Moreover, plaintiff has already narrowly tailored his request to documents directly relevant to his claim, asking for guidelines or protocols, in effect as of July 9, 2021, concerning "how to lock inmates/cellmates in [their] cells, when placing a handcuffed/ restrain[ed] inmate in [their] caged living quarters[.]" *See generally Melendez v. Greiner*, 2003 WL 22434101, at *8 (S.D.N.Y. Oct. 23, 2003) (granting plaintiff's motion to compel "to the extent he is seeking prison rules and policy information relevant to his specific claims"). If portions of

---

[2] But not at Rikers Island. Plaintiff was convicted of aggravated manslaughter and related crimes and is now held at the Elmira Correctional Facility, operated by the New York State Department of Corrections and Community Supervision. (Dkt. 25.)

the responsive documents deal with other subjects, those portions may be redacted.[3] Defendant may also mark the responsive guidelines and policies "confidential" and may submit a proposed form of confidentiality order that appropriately restricts the use of confidential documents produced in discovery.

**Request No. 2**

In his Request No. 2, plaintiff asks for: "Video [surveillance]/video stills of A) [d]efendant being escorted to and from the shower[,] B) the [a]ssault/[a]ltercation[,] C) escorted to medical by the defendant." Def. Ltr. Ex. A, at 1. Again, defendant objected on multiple grounds, some of them not well taken. *Id*. Ex. B, at 4. Notwithstanding those objections, defendant went on to state that he "is continuing to search for information responsive to this request and will supplement this response within thirty (30) days of receiving the responsive information or documents, if appropriate." (*Id.*) In his August 15, 2022 letter, defendant states that he still "has received no indication from DOC that such footage still exists after numerous requests over the span of months. Accordingly, upon information and belief, video surveillance footage and/or stills of the incident no longer exists." Def. Letter at 3.

Normally, "a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody, or control, should resolve the issue of failure of production since one 'cannot be required to produce the impossible[.]'" *Zervos v. S.S. Sam Houston*, 79 F.R.D. 593, 595 (S.D.N.Y. 1978) (quoting *LaChemise Lacoste v. Alligator Co.*, 60 F.R.D. 164, 172 (D. Del. 1973)); *accord In re Application of CBRE Glob. Invs. (NL) B.V.*, 2021 WL 2894721, at *4 (S.D.N.Y. July 9, 2021); *Culbreath v. Griffin*, 2018 WL 11299396, at *7. It seems implausible,

---

[3] In order to avoid construing the request so narrowly as to make it ineffective, the Court will not limit it to documents dealing specifically with the NIC.

however, that the DOC would have no video records whatsoever of the alleged incident, which took place on July 9, 2021 (less than a month before this action was filed), in an "enhanced restraints" area of the NIC, housing prisoners at high risk for violence. *See In re CBRE*, 2021 WL 2894721, at *4 (refusing to accept party's statement regarding non-possession of relevant documents where "it strains credulity"). The Court notes as well that defendant's August 15, 2022 letter carefully states only that, after numerous requests, his counsel has "received no indication from DOC that such still footage exists." Def. Ltr. at 3. The letter does *not* state that counsel has received any contrary indication (*e.g.*, that there were no video cameras in the area, or that the relevant footage was lost or destroyed). Consequently, the Court is not prepared, at this juncture, to declare the issue moot. Instead, the Court will require a more detailed submission from defendant's counsel setting forth, precisely, what requests were made for relevant video footage and what response(s) were received from the DOC.

## Conclusion

Plaintiff's letter-motions to compel defendant Andrews to produce additional discovery are GRANTED IN PART AND DENIED IN PART. As to Request No. 1, defendant shall, within 30 days of the date of this Order, produce all DOC guidelines or protocols, in effect as of July 9, 2021, concerning "how to lock inmates/cellmates in [their] cells, when placing a handcuffed/ restrain[ed] inmate in [their] caged living quarters[.]" If portions of the relevant guidelines or protocols are not responsive to Request No. 1, those portions may be redacted. Defendant shall submit his proposed protective order for the Court's review within ten days of the date of this Order.

As to Request No. 2, defendant shall, within ten days of the date of this Order, submit a letter detailing (a) DOC's efforts, if any, to preserve the video footage relevant to plaintiff's claims;

6

(b) counsel's efforts to locate and produce that footage in this action; and (c) DOC's responses to those efforts.

A portion of plaintiff's July 25, 2022 letter could be construed as a request for an order compelling defendant to respond to his pending Requests for Admission (RFAs). The Court notes again that defendant's responses to plaintiff's RFAs are not due until August 24, 2022. There are thus no grounds at present for plaintiff to seek, or the Court to issue, an order compelling defendant serve those responses.

The Clerk of Court is respectfully directed to close the motions at Dkt. 40.

Dated: New York, New York
       August 23, 2022

                              **SO ORDERED**.

                              _____
                              **BARBARA MOSES**
                              **United States Magistrate Judge**