```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/31/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHRISTOPHER RANSOM,

     Plaintiff,

  -against-

C.O. ANDREWS,

     Defendant.

21-CV-6343 (JPO) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

  By letter-motion dated September 20 and filed September 26, 2022 (Pl. Ltr.) (Dkt. 59), plaintiff Ransom, proceeding *pro se*, seeks spoliation sanctions, arguing that defendant Andrews, a Correction Officer (C.O.) at Rikers Island, failed to preserve the video recordings that would have shown the inmate-on-inmate assault that is the subject of this action. By letter dated October 11, 2022 (Def. Ltr.) (Dkt. 66), defendant filed his response, attaching his written incident report describing the assault (Dkt. 66-1) and three declarations: from Captain W. Verbal, the Supervising Captain of the Rikers Island Video Review Unit (Verbal Decl.) (Dkt. 66-2); C.O. C. Woods, a correction officer in the Video Review Unit (Woods Decl.) (Dkt. 66-3); and Ms. J. Gordon, a paralegal in the legal division of the New York City Department of Corrections (DOC) (Gordon Decl.) (Dkt. 66-4). For the following reasons, plaintiff's motion will be granted.

## Background

  Plaintiff alleges that on or about July 9, 2021, while he was a pretrial detainee housed in the North Infirmary Command (NIC) at Rikers Island, defendant Andrews escorted him from the showers to his "enhanced restraints living quarters" in rear cuffs. Compl. (Dkt. 2) ¶ 1. During the walk, "the defendant and the plaintiff heard the plaintiff['s] cellmate . . . say out loud to another inmate in the next cage that he is going to punch the plaintiff in the face when he walks in." *Id.* ¶ 2. Nonetheless, in violation of "proper protocol," defendant returned plaintiff to his cell still

cuffed, without "locking in" the cellmate, who remained "free to roam the cage" and who assaulted plaintiff "as soon as [he] entered the cage." *Id*. ¶¶ 3-5. Plaintiff further alleges that the cellmate punched him in the facial area and knocked him unconscious while C.O. Andrews failed to intervene. *Id.* ¶¶ 6-7. Andrews escorted plaintiff to medical, where plaintiff lied about how he got hurt, so as not to be labelled a snitch. *Id.* ¶¶ 8-9. However, prison staff later "checked the video surveillance," which "confirmed that the plaintiff was in fact assaulted." *Id.* ¶ 10.

Plaintiff alleges that C.O. Andrews acted with deliberate indifference and a reckless disregard for his safety, and seeks damages pursuant to 42 U.S.C. § 1983. Compl. at ECF p. 5. The Court construes the Complaint as asserting a failure-to-protect claim under the Fourteenth Amendment, which requires correction officials to "take reasonable measures to ensure the safety of prisoners, including protecting them against violence by other prisoners." *Vazquez v. City of New York*, 2022 WL 2704763, at *10 (S.D.N.Y. June 17, 2022) (collecting cases), *report and recommendation adopted*, 2022 WL 2704469 (S.D.N.Y. July 11, 2022). Such a claim requires the plaintiff to establish, among other things, that the defendant officer knew or should have known of a serious risk of harm to the plaintiff but disregarded that risk. *Id.*

## The Discovery Dispute

The present controversy began when plaintiff submitted a letter-motion, dated July 5 and received July 11, 2022 (Dkt. 40), seeking an order compelling defendant to produce, among other items, the surveillance video and/or video stills of the July 9, 2021 incident, which plaintiff had requested pursuant to Fed. R. Civ. P. 34. In a responding letter dated August 15, 2022 (Dkt. 47), an attorney at the New York City Law Department (Law Department), which is representing C.O. Andrews, wrote: "[T]his office has received no indication from DOC that such footage still exists

after numerous requests over the span of months. Accordingly, upon information and belief, video surveillance footage and/or stills of the incident no longer exists." *Id.* at 3.

In an Order dated August 23, 2022 (Dkt. 48), I found it "implausible" that "the DOC would have no video records whatsoever of the alleged incident, which took place on July 9, 2021 (less than a month before this action was filed), in an 'enhanced restraints' area of the NIC, housing prisoners at high risk for violence." *Id*. at 5-6. Consequently, I directed defendant to file a more detailed submission "setting forth, precisely, what requests were made for relevant video footage and what response(s) were received from the DOC." *Id.* at 6.

On September 22, 2022, defendant filed the required letter, in which Assistant Corporation Counsel Caroline McGuire asserted, "[u]pon information and belief," that the requested video "was not maintained and no longer exists," because DOC surveillance videos are automatically deleted after ninety days unless the DOC's Video Retention Unit (VRU) manually saves the video, which it does when an incident is reported to the Central Operations Desk (COD). Def. Sept. 22 Ltr. (Dkt. 55) at 2. In this case, counsel explained, while defendant Andrews reported the July 9, 2021 incident, "it was never reported to the Central Operations Desk, and therefore, [the video] was not immediately saved." *Id.* Counsel added that on September 17, 2021 – after plaintiff filed his Complaint, and after the Law Department was notified of the case – "this Office requested video footage of the incident." *Id*. However, "it appears that the request was not processed in time," and as a result, the footage was deleted three weeks later, at the 90-day mark. *Id*. at 2-3. The present motion followed.

## **The Spoliation Motion**

In his letter-motion, plaintiff requests a wide range of sanctions, including expenses and attorneys' fees (although he has no attorney); "establishing all facts in favor of the plaintiff";

3

"barring the defendant from pursuing certain claims or submitting certain evidence, or striking all or some parties of the defendant['s] pleadings"; holding defendant "in contempt of court"; entering a default judgment against defendant; and/or "at least any other sanctions against the defendant that the courts find appropriate in regards to this matter." Pl. Ltr. at 3. By Order dated September 29, 2022 (Dkt. 62), I directed defendant to respond by October 6, 2022, and advised that any factual assertions made in that response "must be supported by admissible testimony, in the form of affidavits or declarations made on personal knowledge, and/or properly authenticated records." *Id*. at 1-2.

After requesting and obtaining a short extension of time (Dkts. 64, 65), defendant filed his response on October 11, 2022, once again asserting – through counsel – that he properly submitted a written incident report immediately after the altercation. Def. Ltr. at 2. Counsel attaches a copy of that written report, dated July 9, 2021, which states, among other things, that plaintiff's cellmate "without provocation struck inmate Ransom with a closed fist to his facial area, causing inmate Ransom to fall to the ground." *Id*. Ex. A, at 1. The report also states that the "2nd Floor Clinic Area Supervisor was notified of [the] incident." *Id*.

Captain Verbal explains that this report "is the first step to put [a correction officer's] supervisors on notice that an incident occurred, and to protect against the risk of losing evidence." Verbal Decl. ¶ 11. Once the officer writes his report, the "tour commander" of the facility is supposed to report the incident to the COD, which generates a report of all incidents reported within the past 24 hours, and submits that report to the VRU, which "then records the video, and preserves the video for longer than the ninety day retention period." *Id.* A line correction officer, such as defendant Andrews, "cannot directly request preservation of [a] video"; instead, the request "must be made by a tour commander or by the correction officer's command." *Id*. ¶ 13; *see also*

Woods Decl. ¶¶ 8-11 (similar). In this case, "it appears that although Correction Officer Andrews submitted an Incident Report Form, that report was never relayed to the Central Operations Desk" by the (unnamed) tour commander or by defendant's (unnamed) command. Gordon Decl. ¶ 12.

Even if an incident is not initially reported to the COD, the VRU will preserve surveillance video if a separate, direct request for that video is made by the DOC's legal division before the footage is deleted. Woods Decl. ¶ 12; Gordon Decl. ¶¶ 14-15. In this case, after the Law Department was notified of plaintiff's suit, it "emailed Legal Intake at Department of Corrections" on September 17, 2021, "to request a legal representative from the legal division at Department of Corrections be assigned." Gordon Decl. ¶ 7. This was approximately three weeks before the video retention period expired. Ms. Gordon was assigned to the case on September 21, 2021, but "did not know the incident was not [previously] reported to the Central Operations Desk," and as a result did not make the "urgent, separate preservation request from the Legal Division" that was "necessary to preserve the video." *Id*. ¶¶ 9, 14. Consequently, "the video automatically deleted within the ninety day period, on October 7, 2021." *Id*. ¶ 11.

Defendant resists the imposition of spoliation sanctions on three grounds. *First*, he argues that the footage in question would only partially support plaintiff's claim, because the Genetec video surveillance system used by the DOC "does not have audio." Verbal Decl. ¶ 9. Thus, if the relevant footage had been preserved it would show the inmate-ion-inmate assault – which is not disputed – but would not show whether the cellmate "*said* he was going to assault plaintiff" before he did so, or shed light on whether C.O. Andrews "heard this statement." Def. Ltr. at 2 (emphasis added). Thus, defendant asserts, the video would have limited relevance. *Id.* at 2-3.

*Second*, defendant point out that he did not personally control the fate of the video. Def. Ltr. at 3. After reporting the incident through proper channels, C.O. Andrews had no reason to

believe that the notification failed to reach the appropriate departments, and no ability to make a personal request to the VRU or otherwise act to preserve the footage. *Id.* at 3-4. Thus, defendant argues, the DOC's admitted failure to preserve the video should not be imputed to C.O. Andrews, who is the sole defendant in this action. *Id*.

*Third*, defendant contends, it would be inappropriate to sanction him because he did not have a "sufficiently culpable state of mind." Def. Ltr. at 4 (quoting *Rabenstein v. Sealift, Inc.*, 18 F. Supp. 3d 343, 362 (E.D.N.Y. 2014)). In defendant's view, he did not even have a duty to preserve the evidence, because he did not control it. *Id*. Alternatively, if he did have a duty, he discharged that duty by submitting his written incident report. *Id.*

## Analysis

Spoliation of electronically stored information (ESI), including electronically stored video footage, is now governed by Rule 37(e), as amended in 2015, which states:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>     (A) presume that the lost information was unfavorable to the party;
>
>     (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
>     (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e).

Rule 37(e) requires a "three-part inquiry": (1) whether a party failed to take reasonable steps to preserve ESI that should have been preserved in the anticipation of litigation; (2) whether

there has been prejudice to another party from the loss of the ESI, in which case the court may order sanctions "no greater than necessary to cure the prejudice," as authorized by subsection (e)(1); and (3) whether the party responsible for the spoliation "acted with the intent to deprive another party of the information's use in the litigation," in which case the court may impose the "most severe of measures" enumerated in contemplated in subsection (e)(2). *Karsch v. Blink Health Ltd.*, 2019 WL 2708125, at *13 (S.D.N.Y. June 20, 2019) (quoting *Coan v. Dunne*, 2019 WL 1620412, at *6 (D. Conn. Apr. 16, 2019)).

The rule "gives the court discretion to determine prejudice based on the particular facts before it," *Eur. v. Equinox Holdings, Inc.*, 2022 WL 832027, at *3 (S.D.N.Y. Mar. 21, 2022), but requires that it impose the "least harsh sanction that can provide an adequate remedy" for that prejudice. *Dorchester Financial Holdings Corp. v. Banco BRJ S.A.*, 304 F.R.D. 178, 185 (S.D.N.Y. 2014). Subject to that general principle, the court's discretion to determine the appropriate sanction under subsection (e)(1) is broad, and such sanctions may include "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation of such evidence or argument." Fed. R. Civ. P. 37(e) advisory committee notes to 2015 Amendments.

With regard to the first prong of the three-part inquiry, I conclude that defendant Andrews, acting through his counsel, failed to take reasonable steps to preserve the surveillance video showing the July 9, 2021 incident. I accept that, by submitting a written incident report (even before plaintiff sued or threatened to sue), Andrews took appropriate action at the outset to preserve the relevant video footage. Moreover, there is no evidence to suggest that Andrews knew or should have known that his superiors failed to report the incident to the COD, and thus that the VRU

failed to preserve the video in the first instance. Under the circumstances, it would be unfair to impute those DOC failures to C.O. Andrews.

It is entirely appropriate, however, to impute to a defendant any similar failures by his litigation counsel. *See Shipstad v. One Way or Another Prods., LLC*, 2017 WL 2462657, at *3 (S.D.N.Y. June 6, 2017) ("Normally, the conduct of an attorney is imputed to his client, for allowing a party to evade 'the consequences of the acts or omissions of []his freely selected agent' 'would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent.'") (quoting *S.E.C. v. McNulty*, 137 F.3d 732, 739 (2d Cir. 1998)); *Thorpe v. Luisi*, 2005 WL 1863671, at *3 (S.D.N.Y. Aug. 4, 2005) ("[E]ven the gross negligence of an attorney will be imputed to his clients barring evidence of 'diligent efforts by [the clients] to induce him to fulfill his duty.'") (quoting *Dominguez v. United States*, 583 F.2d 615, 618 (2d Cir.1978)). Here, the Law Department and the legal division of the DOC were on notice of this action by September 17, 2021, Gordon Decl. ¶ 8, and a paralegal – who was well aware of the 90-day deadline for requesting video footage before it was deleted – was assigned on September 21, 2021. *Id*. ¶¶ 9-10. However, neither the Law Department nor the assigned paralegal checked to make sure that the incident had been reported to the COD and the video had been preserved. Consequently, although there was still had time to make a direct preservation request to VRU, no such request was made. *Id*. ¶ 14.[1] Since the legal professionals representing C.O. Andrews in this action failed to take reasonable steps to preserve the video evidence, and since

---

[1] Although defendant's counsel stated in her September 22, 2022 letter that the Law Department itself "requested video footage of the incident" on September 17, 2021, Def. Sept. 22 Ltr. at 2-3, there is no admissible evidence in the record that any such request was made. According to Ms. Gordon, the only request made by the Law Department on September 17, 2021, was that "a legal representative from the legal division at the Department of Corrections be assigned to the case." Gordon Decl. ¶ 7.

8

that failure can and indeed must be imputed to the defendant himself, the first prong of the inquiry is met.

The second prong – prejudice – is met as well. I accept that the missing video footage, because it lacked sound, could only partially support plaintiff's claim, and would not directly establish whether (and how loudly) the cellmate threatened to punch plaintiff before he did so. Even without sound, however, the video would show whether, as plaintiff alleges, he was still rear cuffed when he was placed in his cell (making him vulnerable to attack), and whether C.O. Andrews "failed to intervene" as the cellmate "stood over" plaintiff, who was unconscious on the floor. *See* Compl. ¶¶ 4, 6. These matters are not addressed in defendant's incident report and have not otherwise been conceded. Thus, the destruction of the video footage has deprived plaintiff of relevant, non-cumulative, and potentially powerful evidence, constituting prejudice. *See Man Zhang v. City of New York*, 2019 WL 3936767, at *8 (S.D.N.Y. Aug. 20, 2019) (where spoliated Rikers Island video footage could have corroborated testimony that plaintiffs' decedent "consistently complained of chest pain" in the months before he died, while detained, of heart disease, prejudice was established, and sanctions were warranted); *Karsch*, 2019 WL 2708125, at *21 ("It is sufficient [to establish prejudice] if the existing evidence plausibly 'suggests' that the spoliated ESI could support the moving party's case."); *Coan*, 2019 WL 1620412, at *7 (granting sanctions where it was "equally plausible" to believe that there were "other powerfully probative email communications" lost forever).

The third prong – whether defendant intended to deprive plaintiff of the use of the videotape in this action – is not met, as plaintiff concedes. *See* Pl. Ltr. at 3 ("The plaintiff at this time can not prove that the video surveillance was deleted deliberately[.]"). There is no evidence that C.O. Andrews or his counsel acted intentionally, rather than negligently, in failing to preserve

the requested videotape before it was automatically destroyed. Therefore, I accept defendant's assertion that he did not act with a "sufficiently culpable state of mind" to trigger the more severe sanctions set forth in subsection (e)(2), which require a finding of "bad faith" or "intent to deprive." *Man Zhang*, 2019 WL 3936767, at *10. This means that sanctions under Rule 37(e)(2) are unavailable. *Id.*; *see also Bursztein v. Best Buy Stores, L.P.*, 2021 WL 1961645, at *8-9 (S.D.N.Y. May 17, 2021) (finding that sanctions were available under subsection (e)(1), but not (e)(2), due to a lack of sufficient evidence that defendant acted with intent).

The only question left, then, is what sanction is appropriate under Rule 37(e)(1) to remedy the prejudice to plaintiff. Because plaintiff is proceeding *pro se* and *in forma pauperis* (*see* Dkt. 7), the Court cannot award him his (non-existent) attorney's fees or costs. It can, however, rebalance the scales by "permitting the parties to present evidence and argument to the jury regarding the loss of information," as specifically contemplated in the advisory committee notes. *See Equinox Holdings, Inc.*, 2022 WL 832027, at *7 (permitting plaintiff to present evidence to the jury that evidence was lost as a Rule 37(e)(1) sanction); *Leidig v. Buzzfeed, Inc.*, 2017 WL 6512353, at *14 (S.D.N.Y. Dec. 19, 2017) (allowing defendant to present evidence to the jury that the opposing party lost evidence it had an obligation to preserve as a Rule 37(e)(1) sanction). Here too, the appropriate remedy for the negligent spoliation of the relevant video footage is to permit plaintiff to present evidence to the jury (should this action reach trial) that surveillance video of the incident existed; that the video could and should have been preserved within the 90-day window; but that, due to mistakes made on two separate occasions, it was not. However, because sanctions are being imposed pursuant to subsection (e)(1) only, the jury will not be instructed that it "may or must presume" that the evidence was unfavorable to the defendant. Fed. R. Civ. P. 37(e)(2).

**Conclusion**

For the foregoing reasons, plaintiff's motion for spoliation sanctions (Dkt. 59) is GRANTED to the extent set forth above.

Dated: New York, New York
October 31, 2022

SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**

11